[No. 12962. Department One.   June 13, 1916.]

O. G. OLSON, *Respondent*, v. PAUL SCHULZ, *Appellant*, THEODORE F. EGGERS *et al.*, *Defendants*.[1]

PRINCIPAL AND AGENT — RELATION — WRONGFUL ACTS OF AGENT — LIABILITY OF PRINCIPAL. A creditor, secured by note and mortgage, who, by power of attorney, appointed an agent to collect payments and execute *pro rata* releases upon the sale of the mortgaged lots, cannot recover from the mortgagor for misappropriations by the agent in failing to apply payments on the mortgage; since he was his agent, and not the agent of the debtor or mortgagor.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered January 5, 1915, upon findings in favor of the plaintiff, in an action on a promissory note. Reversed.

*Govnor Teats, Leo Teats,* and *Ralph Teats,* for appellant.

*Boyle, Brockway & Boyle,* for respondent.

FULLERTON, J.—This is an action brought by the respondent, Olson, against the appellant, Schulz, and the de-

[1]Reported in 158 Pac. 90.

fendant Eggers, to recover a balance claimed to be due upon a promissory note, and against the defendants Lund to recover for the same liability because of the wrongful act · of R. H. Lund in releasing a mortgage given as security for the note. Judgment went against Schulz and the Lunds; Eggers being released because of his prior discharge in bankruptcy. Schulz appeals.

In November, 1907, Eggers was indebted to Olson in the sum of $3,161, and to Schulz in the sum of about $2,000. Eggers, at that time, owned a tract of land situated in or near the city of Tacoma. In the month named, the parties met in the office of Lund & Lund, who were attorneys at law, for the purpose of making some arrangement for the payment of the debts. At the meeting, it was mutually agreed between them that Eggers should deed the land to Schulz; that Schulz should join with Eggers in a note to Olson for the amount of Eggers' indebtedness to him, and secure the note by a mortgage upon the property; that the property should be platted into lots and placed on the market for sale, and when sold that the proceeds should be applied, first, to the payment of the amount due Olson, and next, to the payment of the amount due Schulz; Olson agreeing to release the lots as they were sold "upon payment of *pro rata* share total indebtedness" to him. On November 14, 1907, pursuant to the agreement, Eggers deeded the property to Schulz, Schulz and Eggers gave a note to Olson, and Schulz executed a mortgage to Olson to secure the same. Later the property was platted into lots and placed on the market for sale. On January 22, 1908, Olson, to facilitate the giving of releases, executed a power of attorney to R. H. Lund, authorizing and empowering Lund, as his true and lawful attorney in fact, to receive and receipt for all moneys due and payable upon the note executed to him by Schulz and Eggers, and to execute releases and satisfactions covering the property described in the mortgage or any part thereof.

Subsequently all of the lots, with the exception of two, were sold at prices ranging from $350 to $500, the total amount realized therefrom being about $8,000. The sales were made by a real estate agent and were closed through the offices of Lund & Lund, who collected the money received from the sales and procured the execution of the releases for the property sold. None of the money paid for the property was received by Schulz, nor did he have anything to do with the sales. His only part in the transaction was to execute deeds and contracts of sale to the property when he was called upon so to do from time to time, all of such instruments being signed and left by him at the offices of Lund & Lund.

Of the moneys received from the sales of the property, but $2,820 was paid on the note of Olson. What became of the balance, the record does not disclose. Some of it was paid to Eggers, but how much is not shown. Some was paid in costs and commissions, but neither is this amount shown. It is reasonably clear, however, that Lund received much more than enough to satisfy the note of Olson.

The last two lots mentioned were applied in satisfaction of a debt due from Eggers to the Scandinavian-American Bank of Tacoma. The transfers necessary to accomplish this purpose were made by Schulz in the usual manner at the office of the Lunds, but his testimony is to the effect that he did not know the purposes to which they were applied.

On this record we cannot conclude that there is any existing liability against Schulz. R. H. Lund was the agent of Olson, not the agent of Schulz, and as between Olson and Schulz, payments to Lund were payments to Olson. If, therefore, Lund misappropriated the funds, the loss must fall upon Olson, whose agent Lund was, not upon Schulz, who was in no wise a party to the misappropriation. This is true even though the misappropriation consisted of advancements to Eggers. No such advancements could be made without the consent of Olson, or without the consent of

the agent who was acting for him. In either event, the loss caused thereby is Olson's, in the absence of a showing that Schulz also consented, of which there is nothing in the record.

The judgment against Schulz is reversed, and the cause remanded with instructions to enter a judgment to the effect that the plaintiff take nothing by his action against him.

MORRIS, C. J., MOUNT, and CHADWICK, JJ., concur.